UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELESTE PACKER,<br><br>    Petitioner,<br><br>  v.<br><br>LYDIA HENSE, Warden,<br><br>    Respondent.<br>    _____/ | No. C 08-5589 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on four of the five claims set forth in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner filed a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

In 2006, a jury in Santa Clara County convicted petitioner of second-degree robbery (Cal. Pen. Code §§ 211, 212.5(c)). The trial court found true the allegations that petitioner had a prior "strike" conviction, had a prior serious felony conviction, and had served three prior prison terms (Cal. Pen. Code §§ 667(a)-(i), 1170.12). The court struck one of the prison priors and sentenced petitioner to a term of thirteen years in state prison. The California Court of Appeal affirmed the conviction and sentence on September 26, 2007 (Exh. G), and the California Supreme Court denied

the petition for review in January 3, 2008 (Exh. H).

The following background facts describing the charges are taken from the opinion of the California Court of Appeal. *See People v. Packer*, 2007 WL 2783335, 1-2 (Cal. Ct. App. Sept. 26, 2007).

On the night of March 24, 2005, a short African-American man wearing a black ski mask, black gloves, and black clothing robbed a liquor store in San Jose of about $500 in cash at gunpoint. He demanded cash from the clerk, who handed the robber the cash drawer. The robber ran out the door and down the street. The store owner and the clerk ran outside, with the owner giving chase. When the robber fell and dropped the cash drawer, the store owner attacked him with a garbage can lid. Petitioner was waiting in the driver seat of a parked car nearby. The robber picked up the money from the ground and, with the owner still in pursuit, he ran into the back seat of the car. Petitioner accelerated the car quickly and sped off with its headlights off. Petitioner's then-fiancee, Monique Pacheco, was in the passenger seat.

A customer of the liquor store, Paul Decker, was inspecting lottery tickets at the time of the robbery, and he had just seen petitioner nearby standing by the driver's door of a car parked under a lamppost. Decker also saw petitioner in the same spot while the robber ran toward the car. A police officer pulled over the car that petitioner was driving about a half-hour later. The robber fled from the back seat. The police officer had seen the robber hand certain objects to Pacheco in the front passenger seat. The black gloves, replica firearm, and ski mask used in the robbery, along with a black sweatshirt consistent with the descriptions that witnesses had given of the robber's clothing, were either under the front passenger seat or between that seat and the car door. Petitioner told the police he barely knew the robber and had no way to contact him. Petitioner gave the police a name, Gerald Washington, but they were not able to locate anyone by that name who fit the description of the robber.

The police never apprehended anyone for the robbery, although the next day they questioned Eddie Curry, who had a physical resemblance to the descriptions of the robber and a prior robbery conviction, after seeing him emerge from petitioner's house. They released Curry for lack of

2

probable cause.

Petitioner did not testify in his defense. He presented Pacheco's testimony that she and petitioner were at home when he received a phone call and wrote something on a piece of paper. They got into her car and petitioner parked it near the liquor store. Petitioner waiting outside the driver's door and reached in to honk the horn twice. About five minutes later Pacheco heard a "bunch of commotion," turned to look, and saw a man in black clothing running toward them. He was not wearing a mask or gloves and had no weapon. Two people were chasing after him, yelling and screaming. The man quickly got into the back seat, and the chasers threw dirt or rocks at the car. Petitioner drove the car away at a normal speed. The car's headlights are programmed to activate automatically. When the police pulled the automobile over, the man in the back seat ran away but did not hand anything to Pacheco.

## ANALYSIS

### A.   STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412 13. A state court decision is an "unreasonable application of" Supreme Court authority, falls

under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546 47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid*.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 06 (1991).

**B.     ISSUES PRESENTED**

Petitioner's four remaining grounds for federal habeas relief are that: (1) there was insufficient evidence of his guilt; (2) his right to present a defense was violated by the trial court's exclusion of testimony about an out-of-court statement by petitioner; (3) his due process rights were violated by testimony that he was on parole at the time of the crime; and (4) the errors identified in issues two and three were cumulatively prejudicial.

**1.     Sufficiency of Evidence**

Petitioner claims that there was insufficient evidence to support his conviction for robbery in

4

the second degree. He was prosecuted on the theory that he was an accomplice to the robber in that he drove the getaway car. Under California law, an accomplice is a principal to a crime. Cal. Pen. Code § 31. The California Court of Appeal explained that "[a] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." *Packer*, 2007 WL 2783335 at 3 (citing *In re Malcolm M.*, 147 Cal.App.4th 157, 165 (2007)).

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 321-24 (1979). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324.

After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)). Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 677-78 (9th Cir. 2007).

The California Court of Appeal found sufficient evidence that petitioner was an accomplice to the robbery based on the following analysis:

5

> The trier of fact heard evidence that defendant received a phone call and thereafter loitered on a street near the Liquor Bin for no apparent purpose, the Liquor Bin was robbed, defendant permitted a masked man to enter Pacheco's automobile and drove him away even though he purported to hardly know him, the man was running at full tilt, two angry men were pursuing the man and pelted the car with objects, the man was wearing a ski mask, the man was wearing gloves that could prevent the leaving of fingerprints, and the man left these articles in the car and ran when a police officer stopped the car defendant was driving. Considering that evidence, a rational trier of fact could find defendant guilty of robbery as an accomplice. There was no due process violation.

*Packer*, 2007 WL 2783335 at 3.

Petitioner was seen waiting by the driver's door of a car near the robbery, the man identified as the robber was seen running from the robbery with the money into the car's backseat, and petitioner got into the car and drove away in what was described as a high rate of speed. Shortly thereafter, the car petitioner was driving was pulled over, the robber fled, and a number of items used in the robbery were found in the car. Although one possibility is that petitioner did not know the man or his purpose in committing the robbery, as he claims, the jury could also rationally conclude, as they did, just the opposite – that there was no reasonable doubt that petitioner knew about the robbery and intended to aid its completion by driving the getaway car. It was reasonable for the state appellate court to conclude that there was sufficient evidence to support the jury's conclusion.

The rejection of this claim by the state appellate courts was neither contrary to no an unreasonable application of clearly established United States Supreme Court authority.

**2.    Exclusion of Evidence**

Petitioner claims that his rights to due process and to present a defense were violated by the trial court's exclusion of testimony by Pacheco about an out-of-court statement by petitioner. According to Pacheco, petitioner told her that "Gerald Washington" called him and told him he was stranded and needed a ride. The trial court found this testimony both irrelevant and to be inadmissible hearsay. The California Court of Appeal upheld the trial court's ruling based on the following reasoning:

> Before Pacheco testified, defense counsel told the court he did not intend to ask her about the phone call defendant received from the robber, because she didn't hear it. Counsel said she would testify that defendant "told her he was going to go

6

pick this person up because he was stranded, and she insisted on going with him." Counsel asserted that the testimony was nonhearsay because it was offered not for its truth but instead to show "what she decided to do" when defendant related the statement the man defendant later identified as Gerald Washington made in his phone call to defendant. The trial court opined that if so, it was irrelevant, and otherwise it was hearsay:

> "[I]t's always suspect when somebody says, 'Oh, well, I'm not offering it for the truth of the matter,' ... [T]he question is always what's the relevance of it if it isn't [offered for its truth]? And there may be ways that you can-you know, did she have a conversation with the defendant? Yes. And as a result of that conversation with the defendant, did you get into the car with him? Yes. And because, you know, to try and get it in without ... the truth of why they were going to the Liquor [Bin] area.... You were trying to get it in there to show that they were there to pick someone up. Not to show that she got into the car with them [ sic ]. And that means that you are offering it for the truth of it. And so that's the objection that I'm dealing with. [¶] So ... if it isn't true, if it doesn't matter whether it's true that they were going there to pick up a friend, then the only point is did she go in the car with him. And you can do that without getting into that conversation." The trial court excluded the evidence.
>
> The trial court's ruling excluding the evidence did not fall outside the bounds of reason. It was reasonable to conclude, as we discern the court did, that either the evidence was hearsay because it was offered as an out-of-court statement to support the defense theory that defendant had an innocent reason for going to collect the man who turned out to have robbed the Liquor Bin, or was irrelevant because it was offered solely to show that Pacheco decided to go with defendant to pick up the individual. The claim is without merit.

*Packer*, 2007 WL 2783335 at 4.

Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The erroneous exclusion of critical, corroborative defense evidence violates the right to present a defense. *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001).

To determine if the exclusion of evidence violated the defendant's right to present a defense, whether the exclusion was pursuant to a correct or erroneous application of the evidentiary rules, the court considers the following factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of

7

the attempted defense. *Stever*, 603 F.3d at 755-56. The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. *Chia v. Cambra*, 360 F.3d 997, 1006 (9th Cir. 2004).

Petitioner sought to introduce Pacheco's testimony of his out-of-court statement to her describing the contents of the phone call he received. If his out-of-court statement was offered for its truth, namely that he was going to the liquor store in order to pick up a man named Gerald Washington and not in order to aid the robbery, then the statement is relevant to petitioner's defense that he had an innocent purpose for being near the liquor store. The evidence was not "reliable," however. To begin with, it is inadmissible hearsay evidence. While the exclusion of relevant evidence pursuant to an evidentiary rule may in limited circumstances violate a defendant's constitutional right to present a defense, the constitutional standard is more permissive of excluding evidence where the exclusion was pursuant to a correct, as opposed to an erroneous, application of such a rule. *United States v. Stever*, 603 F.3d 747, 755-56 (9th Cir. 2010). The exclusion of petitioner's statement to Pacheco, to the extent it was offered for its truth, as inadmissible hearsay was a correct application of the evidentiary rules and there is no argument otherwise.[1] Thus, while the fact that the evidence was correctly excluded under the evidentiary rules barring inadmissible hearsay is not dispositive of the constitutional question, it certainly weighs against finding that the evidence was so reliable that its exclusion was unconstitutional irrespective of its inadmissibility.

The correct exclusion of petitioner's out-of-court statement to Pacheco as inadmissible hearsay would encroach on his constitutional right to present a defense only if it bore persuasive assurances of trustworthiness. *See Lunbery v. Hornbeam*, 605 F.3d 754, 761-62 (9th Cir. 2010). It bore no such assurances. Petitioenr's purported statement was corroborated only by Pacheco who had the clear bias of being his fiancee, and neither petitioner nor the police were able to locate the man, Gerald Washington, who purportedly called him for a ride. Pacheco's hearsay testimony bore

---

[1] Petitioner did not testify at trial. The court recognizes that if petitioner had testified, then his prior statement to Pacheco about the phone call might have been admissible as a prior consistent statement to rebut a suggestion that petitioner had recently fabricated his trial testimony. As petitioner did not testify, however, his prior statement was not admissible for this purpose.

8

no indicia of reliability that would render its exclusion unconstitutional. *See*, *e.g.*, *Rhoades v. Henry*, 596 F.3d 1170, 1177-79 (9th Cir. 2010) (no due process violation in state court's decision to exclude as unreliable the hearsay evidence that third party confessed where confession did not bear indicia of reliability).

To the extent that petitioner's statement to Pacheco was not offered for its truth but in order to explain why Pacheco left with petitioner, as petitioner argued in the trial court, it was irrelevant. Pacheco's reasons for leaving with petitioner had no relevance to whether petitioner intended to pick up the robber or was otherwise involved in the robbery. Nor was it relevant to any other issue in the trial. To the extent Pacheco's testimony was not offered for its truth, therefore, it was irrelevant evidence whose exclusion did not violate petitioner's right to present a defense or to a fair trial.

Accordingly, the rejection of this claim by the state appellate courts was neither contrary to no an unreasonable application of clearly established United States Supreme Court authority.

### 3.     **Testimony About a "Parole Hold"**

Petitioner claims that his due process rights were violated when a San Jose police officer, on cross-examination by defense counsel, referred to petitioner's being on a "parole hold."

The relevant portion of the testimony was as follows:

> Q. And at the time you received this case, had you received any information about a witness by the name of Paul Decker?
> A. As I said, some of the supplemental reports were coming in later. I believe that I received the supplemental report about his statement later; probably later in the day.
> Q. Now, at that point you made a decision that you were going to re-arrest Mr. Packer, if you will?
> A. We made a decision, or I made a decision to contact Sacramento, contact the-to have a parole hold-
> [Defense counsel]: May we approach?
> The Court: Yes.
> (Discussion off the record at the bench.)
> The Court: Motion is withdrawn.
> Q. [Defense counsel:] When you-did you actually personally go re-arrest Mr. Packer yourself?
> A. No, I did not.
> Q. Were you present when that re-arrest took place?
> A. No, I was not.
> Q. So that was an assignment you delegated to other officers?
> A. That's correct.
> [Defense counsel]: I have nothing further.
> The Court: Anything else?
> [The prosecutor]: No, your honor."

9

*Packer*, 2007 WL 2783335 at 6.

Following this exchange, the defense moved for a mistrial on the grounds that the witness's reference to the "parole hold" apprised the jury that petitioner had a criminal record. *Ibid.* The parties both agreed that the witness's testimony had trailed off such that it was possible that the jury did not hear the reference to the parole hold, although the trial court and the attorneys heard it. *Ibid.* After a recess for the weekend, the trial court resumed the discussion of the matter, assumed that "at least some of the jury" had heard the reference to the parole hold, and issued the following curative instruction:

> Ladies and Gentlemen, last week when [the witness] was on the stand, he was asked a question. And that question was withdrawn. You recall there was a little side-bar conference. The question was withdrawn. But I did not instruct you to disregard the answer. The question had to do with whether he had made a decision to go and arrest the defendant. And that question was withdrawn, and I'm now instructing you that the answer-he kind of got cut-off in the middle of the answer anyway; but if you heard and recall that answer, you are now instructed to disregard that answer and not let it in any way come into your deliberations. The answer is stricken. That portion of his testimony is stricken from the record, and you are to treat it as though you never heard of it.

*Ibid.* The trial court denied the motion for a mistrial. *Ibid.*

The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a ruling from the United States Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. 2254(d)(1). *Ibid.* (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)). Under *Holley*, therefore, habeas relief cannot be granted under Section 2254(d)(1) on petitioner's claims that the admission of overly prejudicial evidence of his parole hold violated his right to due process. *See id.* at 1101 n.2 (finding that although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under Section 2254(d)(1), and therefore not grounds for granting federal habeas relief).

Even if federal habeas relief were available on a claim that the admission of overly

10

1 prejudicial evidence violates due process, the testimony about petitioner's parole hold caused no
2 such violation in this case. Circuit case-law on this issue provides that in order to amount to a due
3 process violation, the admission of evidence must be so arbitrary or prejudicial that the trial became
4 fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). The state court's
5 characterizing the reference to the parole hold as a "slip of the tongue" is apt as the witness cut
6 himself off immediately after uttering it and neither the prosecutor nor the defense counsel had
7 asked him about it. The attorneys and trial court even agreed that the jurors may not have heard it as
8 the witness was trailing off when he said it. In any event, the witness did not elaborate upon the
9 parole hold, nor was any connection drawn to petitioner's criminal record. Most importantly, the
10 trial court's curative instruction to the jury to disregard the witness's statement, in which the court
11 did not reiterate what the statement was, prevented it from causing a due process violation. When a
12 curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence
13 and that no due process violation occurred. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). The
14 single, isolated reference to the parole hold that the jury may not have even heard may not have even
15 been audible to the jury, particularly in light of the careful curative instruction to disregard the
16 witness's statement, did not so infect the trial as to render it fundamentally unfair in violation of due
17 process.
18 The state appellate courts' rejection of this claim was not contrary to, or an unreasonable
19 application of, clearly established United States Supreme Court authority.

### 4.  **Cumulative Prejudice**

21 Petitioner claims that the cumulative effect of the errors identified in issues two and three
22 were cumulatively prejudicial. Petitioner cites no Supreme Court precedent, and the Court is aware
23 of none, providing that the cumulative effect of multiple alleged errors may violate a defendant's due
24 process right to a fair trial. As discussed above, AEDPA mandates that habeas relief may be granted
25 only if the state courts have acted contrary to or have unreasonably applied federal law as
26 determined by the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. at 412. In any
27 event, for the reasons discussed above there was no error in excluding Pacheco's hearsay testimony

or in the witness's reference to petitioner's parole hold, and thus there was no prejudice to accumulate.

Accordingly, the state courts' decisions denying Petitioner's claim were not contrary to or an unreasonable application of clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

DATED: October 13, 2010

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\PACKER5589.RUL.wpd